CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 22 2016

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Action No. 3:12CR00035-001 |
| | ) | (Civil Action No. 3:15CV80812) |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| DEWAYNE ROY WILSON, | ) | |
| | ) | By: Hon. Glen E. Conrad |
| Defendant. | ) | Chief United States District Judge |

Dewayne Roy Wilson, a federal inmate proceeding pro se, has moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The government has filed a motion to dismiss, and Wilson has responded, making this matter ripe for consideration. Upon review of the record, the court concludes that Wilson's claims lack merit and that the government's motion to dismiss must be granted.

I.

On December 12, 2012, a grand jury charged Wilson and a codefendant in a four-count superseding indictment with: (1) conspiring to distribute one hundred grams of a mixture or substance containing a detectable amount of heroin, in violation of 21 U.S.C. § 846; (2) distributing a mixture or substance containing a detectable amount of cocaine hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C); (3) possessing with intent to distribute a mixture or substance containing a detectable amount of heroin, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C); and (4) possessing with intent to distribute a mixture or substance containing a detectable amount of cocaine base (or "crack"), in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C).

On February 15, 2013, Wilson's counsel filed a motion to suppress, claiming that Wilson had been arrested without a warrant and without probable cause. The motion was not

accompanied by a memorandum in support. On March 11, 2013, the court held a hearing on the motion. A detective testified that a confidential informant had made a controlled drug buy from Wilson on September 26, 2012 and that on October 24, 2012, Joseph Walker, a different confidential informant, set up another controlled drug buy from Wilson. Police arrested Wilson without a warrant after Walker identified him at the gas station where the second controlled buy was to take place. A video-camera at the convenience store filmed the arrest. Defense counsel cross-examined the detective and elicited testimony that the police did not see any drugs or weapons on Wilson or witness him committing any illegal activity before arresting him. The court denied the motion, concluding that probable cause existed to arrest Wilson without a warrant based on the police's prior contact with Wilson involving drug sales and the fact that Walker identified Wilson as the intended seller when he arrived at the designated location for the controlled buy. (Evid. Hearing at 40-41, ECF No. 135.)

On May 7, 2013, Wilson proceeded to trial. During its case-in-chief, the government presented testimony from Jonathan Hartline, who stated that he frequently bought heroin from Wilson and, on three separate occasions, had purchased heroin from Wilson for someone who turned out to be a confidential informant for the government. (Tr. Trans. at 27-28, 33, ECF No. 122.) Wilson's counsel cross-examined Hartline, underscoring inconsistencies between his testimony and prior statements he had made to police regarding the quantity of drugs that he had bought from Wilson. (Id. at 56.) In addition, counsel highlighted that Hartline was hoping to receive a reduced sentence as a result of testifying. (Id. at 61.) The government also presented testimony from numerous officers involved in the investigation of Wilson. Tim Aylor, a sergeant with the Albemarle County Police Department, testified that he drove Walker, the confidential informant, to the gas station for the second controlled buy. (Tr. Trans. at 51, ECF

No. 123.) Aylor testified that Walker identified Wilson, and Aylor relayed that information to the officers who arrested Wilson. In addition, the government presented testimony from three forensic scientists who tested and weighed the drugs attributed to Wilson. Defense counsel cross-examined two of them rigorously to highlight the margin of error inherent in the weighing process.

Finally, Ashley Powell, Wilson's girlfriend and codefendant, testified that she accompanied Powell during both controlled buys; her five-year-old son was also present during the first controlled buy; and that she used Wilson's phone and rented cars for him with money that he provided to her. (Tr. Trans. at 3, 10 ECF No. 123.) Powell testified that Wilson gave her money to rent a storage unit, where he stored a cardboard box that was later discovered to contain heroin and crack. (Id. at 30-31.) She testified that they went to the storage unit, and then drove to the gas station where Wilson had arranged to meet Walker. (Id. at 39). Defense counsel did not cross-examine Powell. (Id. at 48.)

Following the government's case, defense counsel moved for judgment of acquittal, arguing that the government had presented insufficient evidence of a conspiracy and that even if a conspiracy did exist, the evidence did not establish that it involved 100 grams of heroin. (Id. at 130.) The court denied the motion, concluding that the government had made out a case sufficient to go to the jury as to the conspiracy and the threshold quantity required under Count One. (Id. at 133.).

The jury returned a guilty verdict on all four counts. In anticipation of sentencing, the Probation Department prepared a presentence investigation report ("PSR"). It provided for a total offense level of 30, which included two enhancements: a two-level enhancement for maintaining a premises for the purpose of manufacturing and distributing a controlled substance,

pursuant to USSG § 2D1.1(b)(12); and a two-level enhancement for being an organizer or leader in the conspiracy, pursuant to USSG § 3B1.1(c). (PSR at ¶¶ 22, 24, 29, ECF No. 130.) The PSR also provided for a criminal history category of VI, resulting in a guideline range of 168 to 210 months' imprisonment. (Id. at ¶ 75.)

Defense counsel filed objections to the enhancements but later withdrew them. (Sent. Tr. at 6, ECF No. 121.) At the sentencing hearing, the court adopted the PSR. Defense counsel raised the enhancement issues in arguing for a variance, claiming that Wilson had very little control over Powell in the conspiracy and used the storage unit only once to store drugs. The court agreed with counsel's arguments but concluded that a sentence below the advisory range was not appropriate because Wilson conducted some of his drug business with Powell's five-year-old son in the car. (Sent. Tr. at 16, ECF No. 121.) Accordingly, the court sentenced Wilson to 168 months' incarceration. (Judgment at 3, ECF No. 104.)

Wilson appealed. He challenged only the sentencing enhancement for his leadership role in the offense. United States v. Wilson, 570 F. App'x 341 (4th Cir. 2014). The Fourth Circuit concluded that Wilson had waived his right to appeal because defense counsel withdrew his objections to the PSR. Id. at 341-42.

In his § 2255 motion, Wilson argues that counsel provided ineffective assistance by (1) failing to file a brief in support of the motion to suppress; (2) allegedly excluding Wilson from participating in jury selection; (3) failing to object to certain testimony and to cross-examine certain witnesses; and (4) withdrawing an objection to the sentencing enhancement for maintaining a premises for drug-related activities. Wilson also argues that he was subject to an unconstitutional search and seizure, that his Sixth Amendment confrontation clause rights were

4

violated, that the sentencing enhancement for maintaining a drug-premises was improperly applied, and that he was subjected to sentencing entrapment by the police.

## II.

To state a viable claim for relief under § 2255, a petitioner must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States;" (2) that "the court was without jurisdiction to impose such a sentence;" or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Wilson bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. Jacobs v. United States, 350 F.2d 571, 574 (4th Cir. 1965).

### A. Ineffective Assistance of Counsel

Although ineffective assistance of counsel claims are often properly brought before the court through a § 2255 petition, a defendant must satisfy a two-prong analysis in order to state a viable claim: he must show both that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by counsel's alleged deficient performance. Strickland v. Washington, 466 U.S. 668, 669 (1984). When considering the reasonableness prong of Strickland, courts apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also Gray v. Branker, 529 F.3d 220, 228-29 (4th Cir. 2008). Counsel's performance is judged "on the facts of the particular case," and assessed "from counsel's perspective at the time." Strickland, 466 U.S. at 689, 690.

To satisfy the prejudice prong of Stickland, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

5

*1. Failure to File Brief and Object at Suppression Hearing*

First, Wilson asserts that defense counsel's decision not to file a brief with the motion to suppress constituted ineffective assistance of counsel. Wilson's argument is unavailing. Defense counsel is given wide latitude to make strategic choices in developing a defense. Strickland, 466 U.S. at 690. Wilson admits that counsel said he did not file a brief in order to ensure that the court held a hearing. (Motion at 4, ECF No. 141-1.) Even if the court were to assume that failing to file a brief constituted deficient performance, Wilson cannot establish prejudice. At the motions hearing, trial counsel informed the district court of his theory of suppression, and the court was aware of all the relevant facts. Nonetheless, the court denied the motion to suppress finding that the police had probable cause to arrest Wilson based on prior drug sales known to police, the confidential informant's contact with Wilson prior to the controlled buy, and Wilson's arrival at the control buy location. (Mot. to Supp. Hearing at 40-41, ECF No. 135.) Wilson has not pointed to any additional arguments that counsel might have raised in a brief. Accordingly, he has not demonstrated that there is a reasonable probability that the challenged evidence would have been suppressed, had counsel submitted a brief. See United States v. Podell, 869 F.2d 328, 330 (7th Cir. 1989) (concluding that where defense counsel failed to file a brief in support of a motion to suppress but informed the court of the arguments in support, the defendant could not establish prejudice).

Wilson also argues that counsel provided ineffective assistance by failing to object to the introduction of an edited version of a video documenting his arrest. He claims that the unedited video would have shown that the officers used excessive force when arresting him, which would have required the suppression of the drug evidence found on him. Courts give deference to defense counsel's determinations regarding the type of evidence to present. Wilson v. Greene,

155 F.3d 396, 404 (4th Cir. 1998). Moreover, Wilson's broad claim that officers used excessive force—without any specific support—is unavailing. Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) ("Unsupported, conclusory allegations do not entitle a habeas petitioner" to relief).

Accordingly, Wilson cannot establish that counsel's conduct satisfies Strickland's requirements.

*2. Exclusion from Jury Selection*

Next, Wilson argues that his counsel "did not follow [his] input on the selection of potential jurors." (Motion at 10, ECF No. 141-1.) Wilson does not claim that he was excluded from the jury selection process altogether. Although counsel has a duty to consult with a defendant regarding important issues of defense strategy, "[t]hat obligation . . . does not require counsel to obtain the defendant's consent to every tactical decision." Florida v. Nixon, 543 U.S. 175, 187 (2004) (internal quotation omitted); United States v. Chapman, 593 F.3d 365, 367-68 (4th Cir. 2010) (noting that defense counsel "has the authority to manage most aspects of the defense without first obtaining the consent of the defendant"). Decisions regarding the empanelling of the petit jury are tactical ones. United States v. Boyd, 86 F.3d 719, 723 (7th Cir. 1996) ("Decisions on selection of a jury are among the many entrusted to counsel rather than to defendants personally.") Moreover, Wilson has not made any claim of impropriety with regard to the jury selection. See, e.g., Snyder v. Louisiana, 552 U.S. 472, 476-77 (2008) (noting that to make a viable challenge to the petit jury, a defendant must establish a prima facie showing of impropriety with regard to jury selection). Because jury selection falls within the purview of counsel's trial strategy and because Wilson cannot point to any specific instances of misconduct, this claim also lacks merit.

*3. Failure to Object to Testimony and to Cross-Examine Witnesses*

Next, Wilson argues that counsel failed to cross-examine two crucial witnesses, Ashley Powell and Sgt. Tim Aylor. Powell, Wilson's girlfriend, testified that Wilson gave her a phone and money, which she used to rent storage units and cars, at Wilson's request. (Tr. Tran. At 10, ECF No. 123.) She also testified that for the most part, she was unaware that Wilson dealt drugs, "I really wasn't paying attention. Didn't really care." (Id. at 12.) Sgt. Aylor testified that he drove Walker to the gas station where Walker identified Wilson, and then Wilson was arrested.

It is true that defense counsel chose not to cross-examine either witness. When counsel fails, altogether, to challenge the prosecution's case, a defendant may establish ineffective assistance of counsel. See, e.g., Dixon v. Snyder, 266 F.3d 693, 703 (7th Cir. 2001) (holding defense counsel ineffective when counsel failed to cross-examine the only eyewitness to the crime and failed to introduce evidence that the witness had previously recanted his statement that the defendant was the perpetrator). However, in this case the record shows that counsel made a strategic choice not to cross-examine these witnesses and focus instead on challenging the existence of a conspiracy and the drug weight at issue. Strickland, 466 U.S. at 699.

Defense counsel based his argument for judgment of acquittal on the dearth of evidence of a conspiracy. Counsel argued that Wilson's relationship with Hartline was that of seller and buyer, nothing more. In addition, the government elicited testimony from Powell that she was largely unaware that Wilson sold drugs, and her involvement extended only to renting cars and storage units. By not cross-examining Powell, counsel minimized her importance to the conspiracy, thereby facilitating his argument that no conspiracy existed in the first place. Similarly, there were strategic reasons to avoid cross-examining Sgt. Aylor. His role was relatively minor, as Walker's chauffer to the intended drug buy location. Wilson does not allege

8

any specific information that counsel could have elicited by cross-examining Sgt. Aylor. "When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect." Yarborough v. Gentry, 540 U.S. 1, 8 (2003).

Instead, counsel vigorously cross-examined those witnesses whose testimony bore on the drug weight attributable to Wilson. Counsel questioned Hartline about the amount of heroin he supposedly bought from Wilson and highlighted inconsistencies from prior statements. Counsel also questioned many of the forensic scientists who weighed the drugs to highlight the margin of error inherent in that process.

Wilson also argues that counsel failed to object to hearsay evidence. He appears to challenge the statements by Sgt. Aylor that Walker, who did not testify, identified Wilson as the drug dealer with whom he was planning to meet. Counsel did object to this statement on hearsay grounds at trial, but the court overruled the objection, concluding that Sgt. Aylor could testify regarding what Walker said, not for the truth of the matter asserted, but to establish "the context of what occurred." (Tr. Trans. at 52, ECF No. 123.) Once a court has previously decided an issue, generally it will not revisit the issue on collateral attack. See Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976). Wilson also suggests that counsel should have objected, as hearsay, to a recorded phone call between Powell and Walker arranging the meeting that resulted in Wilson's arrest. Even assuming that such a recording constituted hearsay, it did not provide any information that was not already in evidence, so Wilson cannot establish prejudice. Focusing on the existence of a conspiracy and the drug weight at issue was sound trial strategy and therefore, Wilson has not established that counsel's conduct fell below an objective

standard of reasonableness. Yarborough, 540 U.S. at 7 ("Focusing on a small number of key points may be more persuasive than a shotgun approach.").

*4. Withdrawal of Enhancement for Maintaining a Premises for Drug Purposes*

Wilson's final ineffective assistance claim is that his counsel withdrew an objection to the PSR for a two-level enhancement for maintaining a premises for drug purposes, pursuant to U.S.S.G. § 2D1.1(b)(12). Wilson argues that he did not agree to the withdrawal. Counsel stated at the sentencing hearing that he withdrew the objection because he believed that the enhancement applied. (Sent. Tr. at 13, 15 ECF No. 121.) However, counsel argued that the two-level enhancement did not seem appropriate based on the fact that Wilson merely used the storage unit to house drugs for a few days. (Sent. Tr. at 15, ECF No. 121.) The court agreed, but ultimately decided that any potential reduction in sentence was "outweighed" by the fact that Wilson conducted drug business with Powell's five-year-old son in the car. (Id. at 16-17.) Because counsel raised the issue and the court considered it, Wilson cannot establish prejudice.

Furthermore, Wilson cannot establish prejudice because even if the court had considered the argument as an enhancement objection, it is unlikely a different outcome would have resulted. Under the applicable guideline, "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance" a two-level increase applies. U.S.S.G. § 2D1.1(b)(12). The Application Note regarding the enhancement explains, "Subsection (b)(12) applies to a defendant who knowingly maintains a premises (i.e., a building, room, or enclosure) for the purpose of manufacturing or distributing a controlled substance, including storage of a controlled substance for the purpose of distribution." U.S.S.G. § 2D1.1 cmt. n. 17 (emphasis added). Wilson used the storage unit to store drugs. He also "controlled" the unit because Powell testified that she rented the unit but did so at Wilson's request and with

money that he provided to her. Therefore, the record supports application of the enhancement. See, e.g, United States v. Garcia, 774 F.3d 472, 474-75 (8th Cir. 2014) (concluding that an enhancement under U.S.S.G. § 2D1.1(b)(12) was appropriate, even though the defendant neither owned nor rented the premises at issue, because he had free access to it and used it to store drugs). Accordingly, Wilson has not established that his counsel provided either deficient performance or prejudice under Strickland.

### B. Fourth Amendment Unconstitutional Search and Seizure Claim

Wilson's next claim, that his Fourth Amendment rights were violated because the police arrested him without a warrant or probable cause, also fails. First, it was not raised on appeal, and so is procedurally defaulted. United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999) (noting that an issue not raised on direct appeal is defaulted in a subsequent § 2255 proceeding,). Second, the district court thoroughly considered the alleged unlawfulness of the arrest in denying the motion to suppress. Accordingly, Wilson is not entitled to a rehearing on the issue. See United States v. Schulte, 230 F.3d 1356, *1 (4th Cir. 2000) ("Once a litigant is provided a full and fair opportunity to litigate a Fourth Amendment claim, he cannot re-litigate the claim in a motion pursuant to § 2255 unless there has been an intervening change in law.") (unpublished). Finally, as discussed above, Wilson cannot establish a Fourth Amendment violation on the merits. United States v. Williams, 10 F.3d 1070, 1073 (4th Cir. 1993) (noting that police are justified in effectuating a warrantless arrest if there is probable cause to believe that criminal activity is afoot). Accordingly, this claim must fail.

### C. Sixth Amendment Confrontation Clause Claim

Wilson also argues that his Sixth Amendment right to confront witnesses was violated because counsel did not cross-examine Powell and Sgt. Aylor, and Walker did not testify at his

11

trial. These Confrontation Clause arguments, too, are procedurally defaulted as they were not raised on appeal. Mikalajunas, 186 F.3d at 492-93.

But they are also unavailing on the merits. "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (per curium) (emphasis in original). The defense had the opportunity to cross-examine Powell and Sgt. Aylor, but counsel made a tactical decision not to challenge their testimony. Moreover, Wilson does not allege that any favorable information would have been forthcoming from cross-examining those witnesses.

With regard to Walker, "The Sixth Amendment to the United States Constitution . . . provides that in all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him." Melendez-Diaz v. Massachusetts, 557 U.S. 305, 309 (2009) (internal quotation omitted). Generally, then, a witness must appear at trial to provide testimony, unless their statements are used "for purposes other than establishing the truth of the matter asserted." Crawford v. Washington, 541 U.S. 36, 59 n. 9 (2004). In this case, Walker's statement to Sgt. Aylor identifying Wilson was not admitted for the truth of the matter—to establish the identity of Wilson—but rather to explain the actions that followed—Sgt. Aylor contacted the police officers who arrested Wilson. Therefore, Wilson's Sixth Amendment argument also must fail.

### D. Sentencing Enhancement Errors

Wilson also asserts that the court erroneously applied the sentencing enhancement for maintaining a premises for drug purposes. This claim is procedurally defaulted as it was not raised on appeal. Mikalajunas, 186 F.3d at 492-93. Moreover, as explained above, the record supports the application of the enhancement.

Finally, Wilson argues that he was the subject of "sentencing entrapment" because a detective, during the suppression hearing, testified that the police instructed a confidential informant to purchase enough drugs from Wilson to trigger a mandatory minimum sentence. (Sent. Tr. at 21, ECF No. 135.) Sentencing entrapment occurs when the police encourage a defendant to act criminally, who otherwise lacks the predisposition to commit the charged crime. United States v. Jones, 18 F.3d 1145, 1153 (4th Cir. 1994). Wilson does not claim, nor could he based on the record, that he would not have been predisposed to sell drugs were it not for the police. Moreover, he cannot make out a case of sentence manipulation, which occurs when police engage in "outrageous conduct" with the aim of increasing a defendant's sentence. Id. Police are justified in conducting investigations as they see fit, which might entail purchases of large quantities of drugs or multiple buys from a defendant. Id. at 1155. The police action in this case cannot be characterized as "outrageous." Id. Accordingly, Wilson cannot show that he was subject to sentencing error.

### III.

For the reasons stated herein, the court will grant the government's motion to dismiss. An appropriate order will be entered this day.

ENTER: This 21st day of March, 2015.

                                                               Chief United States District Judge